UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| TIFFANY BRIERE, individually, and TIFFANY BRIERE, as parent and guardian of M.P., a minor<br><br>    Plaintiffs,<br><br>        v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. and FIRST STUDENT, INC.,<br><br>    Defendants. | C.A. No. 1:20-CV-0460-MSM-LDA |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

This matter involves an insurance coverage dispute for underinsured motorist benefits. Before the Court are the parties' cross-motions for summary judgment. (ECF Nos. 49, 53, 60, 65.) After consideration of the parties' arguments and the record evidence, the Court determines that the strictures of the applicable statute, R.I.G.L. § 27-7-2.1, render it inapplicable to the insurance policy at issue.

For the following reasons, the Court GRANTS the Motions for Summary Judgment of the defendant, National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), and the defendant-intervenor, First Student, Inc. ("First Student") and DENIES the Motions for Summary Judgment of the plaintiffs.

1

## I. BACKGROUND

On December 1, 2018, as part of a family outing to Massachusetts, the plaintiffs, Tiffany Briere and her minor daughter, M.P., were passengers on a bus registered in Rhode Island, owned by First Student, and operated by its employee, June McCloy. While on the return trip to Rhode Island but still travelling in Massachusetts, the bus was involved in a collision with two other vehicles, causing the bus to swerve off the road, allegedly causing the plaintiffs serious injuries.

On December 5, 2018, the plaintiffs filed a tort action in Rhode Island Superior Court, Newport County, against First Student, its driver McCloy, and the drivers of the other vehicles, Christy Gilpatrick and Pedro Correia. *Briere et al. v. Gilpatrick et al.*, NC-2018-0441. There, the plaintiffs alleged that the three drivers negligently caused their injuries, and that First Student was vicariously liable for the negligence of McCloy. *Id.* The plaintiffs reached settlement agreements with the insurers for Gilpatrick and Correia but the case against First Student and McCloy proceeded.

First Student is a subsidiary of FirstGroup America, Inc. ("FirstGroup"), a Delaware transportation company with a principal place of business in Ohio.[1] (ECF No. 67-1 ¶ 4.) FirstGroup, through subsidiaries like First Student, provides bus services to customers, many of them school districts, in 49 states. *Id.* ¶ 5. FirstGroup uses an insurance broker, Arthur J. Gallagher Risk Management Services, Inc. ("Gallagher"), to structure an insurance program for this multi-state business. *Id.* ¶

---

[1] FirstGroup is not a party to this case, but its actions are relevant to the issues presented.

7. Relevant here, the insurance program included a primary business auto policy, with a $5 million policy limit, and an umbrella policy, with a $25 million policy limit. *Id.* ¶ 16; ECF No. 67-2. The primary business auto policy ("the Policy") is a fleet policy that covers vehicles in various states and contains various state-specific endorsements. (ECF No. 67-4.)

National Union issued the Policy (effective dates 12/31/17 – 12/31/18) from New York, via Gallagher, also in New York. The Policy was delivered to and accepted by FirstGroup in Ohio. (ECF No. 67-3 ¶ 10; ECF No. 67-4 at 7.)

With respect to the policy limit for uninsured/underinsured ("UM/UIM") coverage, the declarations page of the Policy refers to each state-specific UM/UIM endorsements to the Policy. (ECF No. 67-4 at 8.) But the Policy does not include a UM/UIM endorsement for Rhode Island. (ECF No. 55 ¶ 16.) First Student has provided evidence that FirstGroup's practice was to decline UM/UIM coverage in each state where it was permitted to do so, or to purchase the minimum UM/UIM coverage where outright rejection was prohibited. (ECF Nos. 62-4 at 5 & 62-7.) For the Policy, FirstGroup submitted a Rhode Island UM/UIM coverage selection form checking a box indicating rejection of UM/UIM coverage. (ECF No. 51-2 at 6-11.)

In Rhode Island, the UM/UIM statute, R.I.G.L. § 27-7-2.1, prohibits outright rejection of UM/UIM coverage for policy holders who have policy limits greater than the state minimum for bodily injury liability coverage set forth in R.I.G.L. § 31-47-2(13)(i)(A), which are $25,000 per person/$50,000 per accident. Because FirstGroup had policy limits of $5 million, the most the UM/UIM statute would allow it to reduce

3

its UM/UIM coverage would be to the $25,000/$50,000 minimum. *See* R.I.G.L. § 27-7-2.1(a).

On September 18, 2020, approximately two years after the filing of the state-court action, the plaintiffs submitted claims for underinsured motorist benefits under FirstGroup's Policy with National Union. National Union denied the claim on the ground that the Policy did not provide such coverage per the UM/UIM selection form that FirstGroup submitted, which declined that coverage entirely.

The plaintiffs filed the instant action on October 23, 2020, against National Union, alleging breach of contract (Count I), insurer bad faith (Count II), and seeking a declaratory judgment (Count III). First Student, who was not named a defendant by the plaintiffs, filed a motion to intervene as to Count III because it was an insured under the Policy which was a "fronting policy," meaning the deductible equaled the policy limits, making First Student actually on the hook for payment of any benefits.[2] The Court allowed First Student to intervene. The Court also granted National Union's unopposed motion to sever and stay Count II, the bad-faith claim, until resolution of the breach of contract claim.

On February 28, 2022, the plaintiff filed the first of their two pending motions for summary judgment. (ECF No. 49.) In that motion, on the breach of contract claim, the plaintiffs argue that because the Rhode Island UM/UIM statute, R.I.G.L. § 27-7-2.1(a), prohibits FirstGroup from rejecting Rhode Island UM/UIM coverage,

---

[2] Fronting policies are often issued when a company desires to be self-insured but may need a policy for purposes of a contract with a client and/or to set a limit of exposure.

4

the Policy therefore must provide some such coverage, and National Union's denial was therefore a breach. *Id.*

On March 9, 2022, the plaintiffs filed a second motion for summary judgment, this time on Count III, seeking a declaratory judgment that because the UM/UIM statute prohibited FirstGroup from rejecting Rhode Island UM/UIM coverage, by operation of § 27-7-2.1(a), the Policy's UM/UIM limits should be reformed to equal the Policy's bodily injury limit of $5 million. (ECF No. 53.)

Both First Student and National Union filed cross-motions for summary judgment. (ECF Nos. 60 & 65.) They argued that (1) the UM/UIM statute does not apply because the policy was not delivered in Rhode Island; (2) the plaintiffs had not demonstrated that they were underinsured; or (3) that the Policy should be reformed to have the minimum UM/UIM limits required under Rhode Island law: $25,000 per person/$50,000 per accident.

On September 29, 2022, the Court denied all of the motions for summary judgment without prejudice because given the pending status of the underlying state-court tort action, it was undetermined if the plaintiffs were in fact underinsured. If in state court First Student and its driver were found liable, the plaintiffs may have been made whole from the $30 million available under First Student's primary and umbrella liability coverage (ECF No. 62 ¶ 27), rendering the question of underinsured motorist coverage academic. This Court therefore stayed the matter pending that factual resolution.

On October 19, 2022, the plaintiffs, with the agreement of First Student,

voluntarily dismissed, with prejudice, the state-court action. (ECF No. 81 at 3.) The next day, the plaintiffs filed a motion in this Court to lift the stay arguing that the dismissal with prejudice constituted a full adjudication on the merits that First Student and McCloy were not tortfeasors. *Id.* at 1-2. Thus, under that theory, the only tortfeasors were the settling drivers of the other vehicles, Gilpatrick and Correia, who presumably were underinsured, ripening a path to UIM benefits under First Student's Policy with National Union.

National Union and First Student do not agree with the plaintiffs' view of the effect of the state-court dismissal. (ECF Nos. 82 & 83.) But they did not oppose the lifting of the stay, only asking that the motions for summary judgment be renewed and that they be permitted to submit supplemental briefing on the impact, if any, of the dismissal of the underlying action. The Court granted this request and further asked the parties for supplemental briefing on the potentially dispositive issue of constructive delivery of the Policy, an issue raised though not fully developed in the previously submitted record.

The Court now proceeds to decide the parties' cross-motions for summary judgment, discussing additional relevant facts as necessary.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug. Inc.,* 895 F.2d 46, 50 (1st Cir. 1990). Summary judgment can be granted only when the "pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir. 2000).

### III.   DISCUSSION

The Court finds dispositive a threshold issue raised by the defendants: whether the Rhode Island UM/UIM statute, § 27-7-2.1, is, by its terms, applicable to the Policy. Section 27-7-2.1 provides in relevant part as follows:

> (a) No policy insuring against loss resulting from liability imposed by law for property damage caused by collision, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless [UM/UIM] coverage is provided in or supplemental to the policy….

The statute makes clear that there are two factual predicates that both must be satisfied for the statute's requirements to apply to a policy: the policy must (1) "be delivered or issued for delivery" in Rhode Island and (2) it must insure a vehicle "registered or principally garaged" in Rhode Island. The Rhode Island Supreme Court has ruled accordingly. In *Martin v. Lumbermen's Mut. Cas. Co.,* 559 A.2d 1028, 1031 (R.I. 1989), the court held that a trial justice erred by applying the UM/UIM statute to a policy issued and delivered in Massachusetts, holding that the "statute

7

does not address itself to policies delivered and issued for delivery outside Rhode Island.  Also, the statute is not applicable to policies covering automobiles registered and principally garaged outside Rhode Island."[3]  Again, in *McNamara v. State Farm Ins. Co.*, 633 A.2d 1360, 1360 (R.I. 1993) (mem.), the court affirmed the granting of summary judgment in favor of a defendant insurer because there a policy was issued to a Maryland resident and therefore the UM/UIM statute did not apply.  The court held:

> The language of … § 27-7-2.1 refers to policies "… delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state …"  It indicates that the statute was intended to apply to policies issued within the state of Rhode Island.  On the facts of this case, the court believes the policy in question should be construed under the laws of Maryland.

Furthermore, in *Mendez v. Brites*, 849 A.2d 329, 335 (R.I. 2004), the Rhode Island Supreme Court noted that state law prohibits a vehicle from being registered in Rhode Island without liability insurance.  But, the court noted that "insurers who issue automobile-liability policies *in this state*" are required to offer UM/UIM insurance.  *Id.* at 337 (emphasis added).

Here, there is no dispute that the vehicle was registered in Rhode Island.  The disputed issue is the interpretation of first statutory requirement for the location of the policy's "delivery."

In their briefing, the plaintiffs argued that the policy was actually delivered in

---

[3] *Couch on Insurance* cites *Martin* for the proposition that the Rhode Island UM/UIM statute and others like it are "inapplicable to policies delivered and issued for delivery in another state."  9 Couch on Ins. § 122:25 (Plitt et al., eds. 2021).

8

Rhode Island because years prior to the policy at issue, FirstGroup's insurance agent sent to First Student's client school districts certificates of insurance. (ECF No. 71 at 9-10.)

The Court finds that the presentation of certificates of insurance does not constitute actual delivery of a policy. A certificate of insurance is not a policy, both by its terms and by law. The certificates in this case stated:

> THE CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. … THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

ECF No. 74-5 at 37.

Further, by its plain language, UM/UIM statute concerns a "policy"—not a certificate confirming the existence of a policy. The Rhode Island Supreme Court has interpreted the word "policy" to mean just that, holding in a case concerning UM/UIM coverage that a "certificate of self-insurance is not a 'policy' under § 27-7-2.1" because it was not a "contract of insurance." *Ellis v. R.I. Pub. Transit Auth.*, 586 A.3d 1055, 1058 (R.I. 1991). Moreover, the regulations promulgated by the Rhode Island Department of Business Regulations to implement the UM/UIM statute, which are entitled to deference,[4] define "policy" as "*any contract or agreement of insurance delivered or issued for delivery in this state by or on behalf of any insurer licensed in this state.*" 230 R.I. Code R. 20-05-1.3(A)(2) (emphasis added).

---

[4] *Pawtucket Power Assocs. Ltd. P'ship v. City of Pawtucket*, 622 A.2d 452, 456-57 (R.I. 1993).

9

At oral argument, the plaintiffs raised an additional argument: that if not actually delivered, the Policy was constructively delivered in Rhode Island. After removal of the stay and the renewal of the parties' motions for summary judgment, the Court asked the parties to conduct additional briefing on the issue of constructive delivery; that is, whether Rhode Island law supports constructive delivery with respect to the UM/UIM statute and, if so, the test for determining such delivery. The parties then submitted supplemental memoranda on the subject. (ECF Nos. 85, 89 & 92.)

There is no reported case from Rhode Island state courts applying the doctrine of constructive delivery either to UM/UIM policies specifically or to insurance policies more generally. Yet the doctrine has been recognized and applied in Rhode Island with delivery of other instruments: namely, deeds, bailments, and *inter vivos* gifts. *See, e.g.*, *Tammelleo v. Solomon*, 66 A.2d 101 (R.I. 1949); *Cook v. Cook*, 43 A. 537 (R.I. 1898); *Countrywide Bank, N.A. v. Donahue*, 2015 WL 4282297, at *8 (R.I. Super. Ct. July 19, 2015). Such cases considered whether a transfer of title or possession was intended, thus completing a transaction despite there having been no actual delivery. The parties' intent, then, was the principal factor.

Other jurisdictions, the plaintiffs note, have applied the doctrine of constructive delivery with respect to insurance policies, though it seems most common with policies of life insurance. (ECF No. 85 at 4-7.) This Court, however, need not attempt a firm prediction on whether the Rhode Island Supreme Court would recognize constructive delivery under the UM/UIM statute because even

10

assuming there is an avenue for such delivery, the plaintiffs do not meet it in this case.

The evidence the plaintiffs point to in support of constructive delivery is, again, that FirstGroup, as a matter of practice, had its agent send certificates of insurance and other documents as proof of insurance to its client school districts in Rhode Island. But "delivery" of an insurance policy occurs between the parties to that contract—specifically from insurer (here, National Union) to insured (FirstGroup), not from the insured to some third party (Rhode Island school districts). *See* 16 Williston on Contracts § 49:60 (4th ed.) ("Delivery of the policy of insurance, either actual or constructive, by the insurer to the applicant…."); 44 C.J.S. Insurance § 514 ("delivery of the insurance policy to the insured …."); 44 C.J.S. Insurance § 517 (an agent "may be authorized by an insurer to deliver a policy."). Indeed, the regulations promulgated by the Rhode Island Department of Business Regulations to implement the UM/UIM statute provide in the definition of "policy": "any contract or agreement of insurance delivered or issued for delivery in this state *by or on behalf of any insurer* licensed in this state." 230 R.I. Code R. 20-05-1.3(A)(2) (emphasis added).

Further, while the plaintiffs submit several cases from other jurisdictions that considered constructive delivery based upon the sending of certificates of insurance, it is noteworthy that in each case it was the insurer that sent the certificate. *See Gulf Ins. Co. v. Davis*, 65 F.3d 166 (4th Cir. 1996); *Troup v. Cont'l Cas Co.*, 40 Va. Cir. 365 (1996); *Williams v. Moore*, 2009 WL 7199670 (Ind. Super. Ct. June 2, 2009).

Here, there is no evidence that the *insurer*, National Union, intended to deliver

a policy in some manner that could be construed as delivery in Rhode Island pursuant to the UM/UIM statute. The only discernable delivery was actual, and it was in Ohio.[5] As such, the Court must conclude as a matter of law that the Policy was not "delivered or issued for delivery in this state." *See* R.I.G.L. § 27-7-2.1(a).

The plaintiffs next argue that because the Policy was a "multiple risk" or "fleet policy" insuring risks in several states and that the parties to the insurance contract knowingly intended to insure vehicles in Rhode Island, the terms issuance and delivery in the UM/UIM statute should be construed flexibly. This proposed flexibility, the argument goes, would allow the Court to consider the Policy as multiple policies, with one deemed delivered in Rhode Island, the location of the insured risk. The plaintiff derives this theory from choice-of-laws rules involving such "multiple risk" policies which applied the law of the state where the insured risk was located. (ECF No. 85 at 10-13.) In such cases, the location of the insured risk is the most important factor in determining what state's law to apply. *Id.* Thus, it would follow that Rhode Island law should apply.

But the issue is not whether Rhode Island law applies generally in the choice-of-laws sense, because even assuming it does,[6] the question turns to whether this

---

[5] National Union raises an interesting argument that constructive delivery can be considered only in the absence of actual delivery and because there was actual delivery here (to Ohio) the Court should not proceed to the question of constructive delivery. But the narrow question is whether there was delivery in Rhode Island per the UM/UIM statute and because there was no actual delivery in Rhode Island it seems fair to consider constructive delivery.

[6] Whether Rhode Island law generally applies to the Policy is itself in doubt because Rhode Island adheres to a *lex loci contractus* theory; that is, "the law of the state

specific statute, the UM/UIM statute, applies. And whether that statute applies is determined by its terms. Those terms, which make no distinction between fleet policies and personal automobile policies, limit the statute's application to policies delivered or issued for delivery in Rhode Island for vehicles registered or principally garaged there. *See* § 27-7-2.1(a). The Court cannot discern from the statutory language any exception to the statute's delivery requirement for fleet policies such as the Policy at issue here. So there must be delivery and, as discussed, there is no evidence of any delivery to Rhode Island here.

Moreover, to construe a policy as delivered in Rhode Island on the sole basis that it is a fleet policy that includes coverage for vehicles registered in Rhode Island would be to collapse the two distinct statutory requirements into one. Under the plaintiffs' theory, because the policy is a fleet policy, all that is required here is that the vehicle be registered or principally garaged in Rhode Island. That would not follow the plain language of the UM/UIM statute, and the statutory interpretation set forth by the Rhode Island Supreme Court which identifies two distinct requirements: in-state delivery and in-state vehicle registration or garaging. *See, e.g., Martin*, 559 A.2d at 1031 ("The statute does not address itself to policies delivered or issued for delivery outside Rhode Island. *Also*, the statute is not

---

where the contract was executed governs." *DeCesare v. Lincoln Benefit Life Co.*, 852 A.2d 474, 483-84 (R.I. 2004). The one Rhode Island case that the plaintiffs cite in support of their argument that a fleet policy should apply the law of the state where the risk is located, *Gen. Accident Ins. Co. of Am. v. Budget Rent a Car Sys., Inc.*, No. 94-5616, 1999 WL 615737, at *1 (R.I. Super. Ct. Aug., 2, 1999), is a Superior Court opinion predating the Supreme Court's decision in *DeCesare*.

13

applicable to policies covering automobiles registered and principally garaged outside Rhode Island.") (emphasis added).

This Court cannot bend the issuance or delivery requirement so far as to break it. Principles of statutory construction require that "no construction should be adopted which would render statutory words or phrases meaningless, redundant, or superfluous." *Lopez-Soto v. Hawayek*, 175 F.3d 170, 173 (1st Cir. 1999); *see also In re J.T.*, 252 A.3d 1276, 1281 (R.I. 2021) (rejecting an interpretation that would "in essence, rewrite the statute—thereby flying in the face of the fundamental principle that a court should not rewrite a statute enacted by the General Assembly") (internal quotations omitted); *Lang v. Mun. Emps.' Ret. Sys. of R.I.*, 222 A.3d 912, 915 (R.I. 2019) ("The Legislature is presumed to have intended each word or provision of a statute to express a significant meaning, and the Court will give effect to every word, clause or sentence, whenever possible.").

The Rhode Island Supreme Court is not alone in interpretation of the two separate prerequisites of in-state delivery and in-state registration/garaging. Many courts in other jurisdictions considering similarly worded language in UM/UIM statutes, including cases involving fleet policies, have concluded that in-state delivery is a distinct requirement. *See, e.g.*, *Pierzchalski v. Northbrook Prop. & Cas. Co.*, 914 F.2d 263 (9th Cir. 1990) ("[W]e conclude that the statute applies only to policies that are delivered or issued for delivery in Arizona *and* that cover vehicles registered or principally garaged in Arizona.") (emphasis in original); *Lewis v. XL Catlin*, 542 F. Supp. 3d 1159, 1167–68 (D.N.M. 2021), *appeal dismissed*, No. 21-2077, 2021 WL

14

6197126 (10th Cir. Sept. 27, 2021) (considering a fleet policy and holding that the "the policy must be delivered or issued in New Mexico in addition to the registration/garaging requirement …. And this view accords with a majority of courts who have analyzed similar UM/UIM statutes"); *Tomars v. United Fin. Cas. Co.*, 12–cv–2162 (JNE/HB), 2015 WL 3772024, \*12-13 (D. Minn. June 17, 2015) (holding that Minnesota law did not require a fleet policy to include UM/UIM coverage because the policy was not delivered or issued for delivery in Minnesota); *McGoff v. Acadia Ins. Co.*, 30 A.3d 680, 683 (Vt. 2011) (considering a fleet policy and holding that "the courts construing statutes similar to [Vermont's UM/UIM statute] are nearly unanimous in concluding that insurance policies such as the instant Acadia policy are not subject to that state's statutory UM/UIM coverage requirements unless the policy was delivered or issued for delivery in that state, even if the subject vehicle was regularly garaged in that state."); *Cherokee Ins. Co. v. Sanches*, 975 So. 2d 287, 293 (Ala. 2007); *Gilbert v. Hodgkins*, 2006 WL 1545532, at \*2 (Me. Super. Ct. Mar. 16, 2006); *Cent. Transport, Inc. v. Blake*, 985 S.W.2d 805, 809-10 (Mo. Ct. App. 1998); *Ins. Co. of Pa. v. Hampton*, 657 A.2d 976, 978-79 (1995); *Burns v. Aetna Cas. & Sur. Co.*, 741 S.W.2d 318, 322 (Tenn. 1987); *but see Douglas v. Discover Prop. & Cas. Ins. Co.*, 810 F. Supp. 2d 724, 731 (M.D. Pa. 2011) (holding that, to bar corporations from "self-serving" delivery locations, the Pennsylvania UM/UIM statute applied to a vehicle garaged in that state despite a fleet policy being delivered out of state).

The plaintiffs continue to press that it is possible to consider only the location of the insured risk because that is the "better rule of law" and, in this instance, would

comport with the public policy of the UM/UIM statute, which is "indemnification for an insured's loss rather than defeat of his or her claim." *See Am. States Ins. Co. v. LaFlam*, 69 A.3d 831, 835 (R.I. 2013). To achieve that purpose, it would follow, the Court should disregard any construction that requires some form of delivery. The plaintiffs rely primarily on a decision of the Supreme Court of Wyoming, *Sinclair Wyoming Refining Company v. Infrassure, Ltd.*, 486 P.3d 990 (Wy. 2021), where that court considered an insurance statute (not a UM/UIM statute) that applied only to policies delivered or issued for delivery in Wyoming. Specifically, the statute under the court's analysis, Wyo. Stat. Ann. § 26-15-101(a)(ii), provided that the Wyoming insurance code did not apply to policies not delivered or issued for delivery in the state, but it did not, like the UM/UIM statute, have a second requirement, the in-state vehicle registration or garaging requirement. The court adopted a theory of constructive delivery and concluded that if the insured and the insured risk are in Wyoming, then the policy was deemed to be delivered and issued for delivery in Wyoming. *Id.* at 999. But to apply this interpretation here would again excise the delivery requirement from the UM/UIM statute, leaving only the second requirement, because any policies insuring risk in the state are presumed delivered. This does not accord with precedent interpreting the UM/UIM statute which the Rhode Island Supreme Court has made clear "was intended to apply to policies issued within the state of Rhode Island," *McNamara*, 633 A.2d at 1360, and therefore "does not address itself to policies delivered and issued for delivery outside Rhode Island," *Martin*, 559 A.2d at 1031. *See also LaPlante v. York Ins. Co. of Me.*, 1:07-cv-00062-ML-DLM,

16

2008 WL 239611, at *3 (D.R.I. Jan. 28, 2008) (quoting *McNamara*, noting that the UM/UIM statute "applies only to insurance policies 'delivered or issued for delivery in' Rhode Island," and holding that the UM/UIM statute did not apply because "the Policy at issue here was issued and delivered in Vermont"); *Aetna Cas. & Sur. v. Moniz*, KC-92-899, 1996 WL 936977, at *4 (R.I. Super. Ct. Sept. 12, 1996) (applying *McNamara* and holding that the UM/UIM statute was inapplicable to a policy delivered and issued to a Massachusetts insured). Thus, an interpretation of the delivery requirement so liberal to conclude that a fleet policy is always "delivered" in Rhode Island for any vehicle registered or garaged there is not warranted under existing law. *See Braga v. Genlyte Grp., Inc.*, 420 F.3d 35, 42 (1st Cir. 2005) ("A federal court sitting in diversity must take care not to extend state law beyond its well-marked boundaries."). A court must actually consider, as a separate requirement, where delivery occurred.

The UM/UIM statute simply was not written to provide the outcome the plaintiffs assert.[7] Although it may make better public policy, at least for the plaintiffs here, to simply look past the delivery requirement and declare delivery in Rhode Island because that is where the vehicle was registered, this Court must apply the UM/UIM statute as written. *See Ellis*, 586 A.2d at 1060 (holding in a case involving

---

[7] It could be amended that way, as the legislature of Arizona did after the Ninth Circuit determined that a reading of the Arizona UM/UIM statute to apply to all vehicles registered or principally garaged in that state "would nullify the 'delivered or issued to be delivered' language." *Pierzchalski*, 914 F.2d at 263, *3. The Arizona legislature later deleted the subsection which contained the in-state delivery requirement. Ariz. Rev. Stat. Ann. § 20-259.01 (1993 amendment).

17

the UM/UIM statute that "'public policy' is not some magical incantation this court can invoke that allows us to abdicate our judicial role and rewrite a statute or interpret it in ways that the General Assembly clearly did not intend").

The plaintiffs raise a concern, again viewing the matter as a choice-of-laws question, that if the UM/UIM statute does not apply, the most likely alternative is Ohio law, the state where delivery occurred. Ohio law would be problematic for the plaintiffs because that state's UM/UIM statute, too, applies to policies delivered or issued for delivery in that state for vehicles registered or principally garaged there. Ohio Rev. Code Ann. § 3937.18. The problem then would turn to registration, not delivery. The plaintiffs' solution is for this Court to apply the Rhode Island statute but modify the delivery requirement—something the Court is not empowered to do. And again, the issue is not simply determining which state's law to apply, the issue remains what the law—a UM/UIM statute—says. Under either state's law the plaintiffs failed to establish a necessary requirement for application of the respective UM/UIM statute.

In sum, because the plaintiffs' prayer for relief under Counts I and III is premised upon the application of the Rhode Island's UM/UIM statute and the Court cannot apply it here, the plaintiffs cannot sustain those claims and summary judgment on them must issue. Because this issue is dispositive of those Counts, the Court does not proceed to the parties' other arguments.

Count II, the insurer bad-faith claim, currently remains severed and stayed from the other Counts. National Union offers, though only in a footnote, that because

of the failure of the breach of contract claim, the bad-faith claim, too, must fail. (ECF No. 64 at 16 n.3.) The plaintiffs did not address this issue and First Student moved for summary judgment only in regard to the claim for which it intervened: Count III. The Court finds that it is best to require National Union to move directly on dismissal of Count II and to allow the plaintiffs to respond, should they choose.

## IV.   CONCLUSION

For the foregoing reasons, the plaintiffs' Motions for Summary Judgment (ECF Nos. 49 & 53) are DENIED. The defendants' Motions for Summary Judgment (ECF Nos. 60 & 65) are GRANTED on Counts I and III on the issue that Rhode Island's UM/UIM statute, R.I.G.L. § 27-7-2.1, does not apply because the Policy was not delivered or issued for delivery in Rhode Island.

IT IS SO ORDERED.

_/s/ Mary S. McElroy_
———————————————
Mary S. McElroy
United States District Judge

June 20, 2023